# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3822-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

D.S.C.,

     Defendant-Appellant,

and

D.S.V.,

     Defendant,

_____

IN THE MATTER OF THE
GUARDIANSHIP OF H.A-U.V.,
a minor.

_____

Submitted June 3, 2021 – Decided July 6, 2021

Before Judges Sumners and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0102-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Marc D. Pereira, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Mary L. Harpster, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Louise M. Cho, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Following a Title 30 guardianship trial, Judge Nora J. Grimbergen terminated the parental rights of D.S.C. ("Dana")[1] and D.S.V. ("Daniel") to their two-year-old daughter H.A-U.V ("Helen"). Dana appeals; the Law Guardian and the Division of Child Protection and Permanency ("Division") urge that we uphold the decision.[2] We affirm.

---

[1] We use pseudonyms or initials to protect the confidentiality of the participants in these proceedings. R. 1:38-3(d).

[2] Daniel did not attend the trial and did not appeal; he is not a party in this matter.

At her birth in January 2018, Helen was diagnosed with global development delay, receptive-expressive language delay, and gross motor delay, among other things, and it was recommended that she have Early Intervention services consisting of physical therapy and developmental intervention. She was removed from Dana's care within three days of her birth when the Division substantiated Dana and Daniel for neglect upon finding Dana and Helen residing with Dana's friend in an apartment without working utilities that was being heated by the stove. Helen was placed in the resource home of W.M. and J.W., where she currently resides. Daniel also lacked stable housing and was not engaged in services the Division had previously offered him to address his anxiety, depression, and anger issues. The day after Helen's emergency removal, the family court granted the Division custody of Helen.

Dana and Daniel are the biological parents to D.V. (Doug), born in March 2017, who resides in the legal and physical custody of his paternal grandfather D.V. (Denzel) and is not a subject of this appeal. Dana is also the mother to four other children, three of whom reside with their father, A.B., and one who is in the Division's custody.

After Helen's removal, the family court ordered Dana to comply with a variety of services recommended by Denise M. Williams Johnson, Ph.D., based

A-3822-19

on her psychological evaluation of Dana. The services included visitation, parenting skill classes, housing assistance, substance abuse and mental health treatment, and domestic violence classes. Dana was either inconsistent in complying or failed to comply with the services, and she failed to maintain contact with the Division. At one point, the Division learned that Dana was homeless and sleeping at Newark Penn Station but was unable to locate her there.

The Division assessed and ruled out all biological family members and friends offered as kinship legal guardian for Helen. A maternal cousin, D.K., was ruled out due to past history of drug abuse and was being treated for PTSD. Dana's sister A.T. was ruled out as she could not commit to caring for Helen when initially contacted by the Division, was later unresponsive to the Division, and then declined. Dana's sister's girlfriend, M.H.-J. withdrew her consideration after she had a baby. Another maternal cousin, Z.K.-H., who resided in North Carolina, was denied licensure following three interstate assessment requests to that state. A family member, D.C., was ruled out due to her criminal and Division history. Dana did not provide contact information for C.H. or A.C., and G.B., Dana's girlfriend, was ineligible as they lived together. Denzel was

4

assessed as well but was ruled out due to space issues and his disqualifying criminal history; he did not appeal.

The Division presented expert testimony by a psychologist, Barry A. Katz, Ph.D., concerning his psychological and bonding evaluations.[3] Dr. Katz determined Dana's parenting ability to be "impaired" and "likely to [remain so] for the foreseeable future." He believed that Helen did not view Dana as a parental or nurturing figure but did view her resource parents as such. Dr. Katz found the resource parents to be Helen's psychological parents. Due to Dana's chronic history of parenting deficits as evidenced with her other children, Dr. Katz believed she required "long-term intensive therapy." Dr. Katz did not recommend offering any further services towards reunification because Dana had not shown any ability to benefit from the services provided by the Division. He opined that removing Helen from her resource parents would cause "significant, enduring trauma" that Dana would be unable to mitigate.

The resource parents also were evaluated by Alison Strasser Winston, Ph.D., to assess their parenting ability following an alleged incident of abuse of another child in their care. Dr. Winston's psychological evaluation concluded

---

[3] During Dr. Katz's testimony, the court ordered Dana to leave the courtroom due to her frequent outbursts; she was not allowed back until closing arguments.

A-3822-19

the resource parents were "caring and concerned" adults who were committed to their foster children and should be allowed to adopt as there was no substance to the abuse allegations.

Dana neither testified at trial nor presented any witnesses. Judge Grimbergen issued an order and twenty-nine-page written opinion finding the Division had established all four prongs required to terminate parental rights under N.J.S.A. 30:4C-15.1(a)(1) through (4).

In this appeal, Dana attacks the judge's findings on all four prongs. She argues the judge erred in finding that the Division proved the first prong based on her failure to address her mental health and substance abuse issues and her lack of stability due to the considerable amount of time she was incarcerated and homeless. With respect to the second prong, she argues the judge ignored the fact that she only tested positive for marijuana once and oxycodone once, both times in one month—and over a year and a half before the court terminated her parental rights. As for the third prong, Dana argues the services offered by the Division were not tailored to meet her needs, and it did not offer her visitation while she was incarcerated. She argues the Division failed to make reasonable efforts to evaluate a family caretaker for Helen and possible alternatives to termination of parental rights. And with respect to the fourth prong, Dana argues

A-3822-19

Dr. Katz's opinion concerning her parental skills and the resource parents' parenting ability are contradicted by the record. Dana argues the record demonstrates that she continued efforts to remain in contact with Helen, thereby refuting the doctor's assessment that she did not establish a parenting relationship with her child. Dana also notes it is unclear whether Dr. Katz considered the impact of terminating her parental rights upon Helen's siblings.

Our scope of review in Title 30 guardianship cases is limited. The trial judge's findings in such cases generally should be upheld so long as they are supported by "adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). The judge's decision should only be reversed or altered on appeal if his or her findings were "so wholly unsupportable as to result in a denial of justice." N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 511 (2004) (quoting In re Guardianship of J.W.H., 172 N.J. 440, 472 (2002)). We must give substantial deference to the judge's opportunity to have observed the witnesses first-hand and to evaluate their credibility. R.G., 217 N.J. at 552. We must also recognize the expertise of the Family Part judge in matters involving the alleged abuse or neglect of children. See, e.g., N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012);

N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 476 (App. Div. 2012).

Applying these principles to the evidence in this case, we reject Dana's arguments to set aside the final judgment of guardianship. All four prongs of the statutory criteria are abundantly supported by the record. Judge Grimbergen's decision comports in all respects with the law. We therefore affirm the termination of appellant's parental rights, substantially for the sound reasons detailed in her written opinion. No further discussion of the judge's cogent analysis is necessary. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION